**KOLLER LAW LLC**
David M. Koller, Esq. (90119)
Jordan D. Santo, Esq. (320573)                              *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DAWN HANCOCK,** | : | Civil Action No. 26-1016 |
| 3184 Belgrade Street | : | |
| Philadelphia, PA 19134 | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **Complaint and Jury Demand** |
| | : | |
| **JAZWARES, LLC,** | : | |
| 10 Canal Street, Suite 327 | : | |
| Bristol, PA 19007 | : | |
| | : | |
| 7850 SW 6th Court | : | |
| Plantation, FL 33324 | : | |
| Defendant. | : | |

**CIVIL ACTION**

Plaintiff, Dawn Hancock (hereinafter "Plaintiff"), by and through her attorney, Koller Law, LLC, bring this civil matter against Jazwares, LLC (hereinafter "Defendant"), for violations of the Americans with Disabilities Act of 1990, as amended ("ADA"), and the Pennsylvania Human Relations Act ("PHRA"). In support thereof, Plaintiff avers as follows:

**THE PARTIES**

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

2. Plaintiff is an adult individual residing at the above captioned address.

3. Upon information and belief, Defendant Jazwares, LLC is a toy manufacturer with a location

at 10 Canal Street, Suite 327, Bristol, PA 19007 and corporate headquarters located at 7850 SW 6th Court, Plantation, FL 33324.

4. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

5. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer. In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

6. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

7. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in <u>International Shoe Co. v. Washington</u>, 326 U.S. 310 (1945) and its progeny.

8. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

9. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure

because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

10. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Plaintiff is domiciled in this judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

12. Plaintiff exhausted her administrative remedies under the ADA and PHRA.

13. On or about May 8, 2024, Plaintiff timely filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination and retaliation against Defendant.

14. The Charge was assigned a Charge Number 530-2024-05914 and was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

15. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") via request relative to the Charge and that Notice is dated April 3, 2025.

16. Prior to the filing of this action, Plaintiff notified the EEOC of her intent to proceed with a lawsuit in federal court.

17. Plaintiff files the instant Complaint within ninety (90) days of her receipt of her Right to Sue in this matter, as it relates to her federal law claims, and within two (2) years of the issuance of the Right to Sue in this matter as it relates to her PHRA claims.

18. Plaintiff has exhausted her administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

### PLAINTIFF'S DISABILITIES

19. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

20. Plaintiff has the serious health conditions of Generalized Anxiety Disorder ("GAD"), Major Depressive Disorder ("MDD") and Post Traumatic Stress Disorder ("PTSD"), all of which are considered disabilities under the ADA and the PHRA.

21. The major life activities affected by GAD, MDD and PTSD, include, but are not limited to, sleeping, communicating and working.

### PLAINTIFF'S EMPLOYMENT HISTORY

22. On or about February 28, 2022, Defendant hired Plaintiff in the position of Senior Copywriter.

23. Plaintiff was well qualified for her position and performed well.

### PLAINTIFF SUFFERED FROM PANIC ATTACKS AT DEFENDANT AND HOME

24. Shortly after her hire, Plaintiff began to suffer from panic attacks related to her disabilities of Defendant.

25. Plaintiff also suffered from panic attacks at her home which prevented her from leaving her house to come to work.

### PLAINTIFF REQUESTED AND WAS APPROVED FOR THE REASONABLE ACCOMMODATION TO WORK REMOTELLY FULL-TIME

26. In or around late March 2022, Dr. Roman Roytman, Psychiatrist, wrote Plaintiff a doctor's note requesting the reasonable accommodation of full-time remote work for six (6) months.

27. Plaintiff sent Dr. Roytman's note to Hartford Insurance, Defendant's third-party benefits provider.

28. Shortly thereafter, Hartford Insurance approved Plaintiff's reasonable accommodation request for full-time remote work and notified Plaintiff of the approval via email.

29. In or around the end of September 2022, Dr. Roytman requested an extension to Plaintiff's reasonable accommodation request to work remotely.

30. Hartford Insurance again approved Plaintiff's reasonable accommodation request.

## PLAINTIFF INFORMED DEFENDANT OF HER WORSENING SYMPTOMS

31. In or around the end of 2022, Plaintiff's symptoms worsened.

32. Plaintiff notified Betsy Burkett, Vice President of Marketing, of this via email in order to keep her updated of her medical situation.

## DEFENDANT PROCEEDED TO REMOVE PLAINTIFF'S JOB DUTIES AND EFFECTIVELY DEMOTED HER

33. Burkett began to remove Plaintiff's job duties and assigned them to other non-disabled Copywriters, including, Mikel Laiche, Copywriter.

34. Further, in or around January 2023, Defendant created a new position for Christine Nessen, Senior Director Digital Marketing, between Plaintiff and her former direct supervisor, Burkett.

35. This essentially demoted Plaintiff in the organizational structure.

36. Nessen took over many of Plaintiff's prior responsibilities, including, but not limited to, team leader of the Copywriter team.

## PLAINTIFF WENT OUT ON FMLA LEAVE FOR SIX (6) WEEKS

37. In or around early March 2023, Plaintiff applied for, and was approved for, six (6) weeks of Family and Medical Leave Act ("FMLA") leave in order to attend partial in-patient treatment for her disabilities.

38. On April 17, 2023, Plaintiff returned to work at Defendant on a hybrid schedule of three days (3) in the office and two (2) days remotely.

### DEFENDANT REMOVED PLAINTIFF'S PROJECTS FROM HER WHEN SHE RETURNED FROM HER APPROVED FMLA LEAVE

39. Upon her return to work, Plaintiff noticed that all of her projects had been delegated to Nessen and other Copywriters.

40. When Plaintiff asked Nessen what Plaintiff was supposed to do, Nessen instructed Plaintiff to "just figure out things to do," or words to that effect.

### PLAINTIFF COMPLAINED TO NESSEN MULTIPLE TIMES ABOUT BEING STRIPPED OF HER JOB DUTIES, BUT HER COMPLAINTS WERE NOT PROPERLY ADDRESSED

41. Plaintiff complained to Nessen via video call approximately five (5) times from the week of April 17, 2022 to in or around June 2022 that she was being pushed out due to her disabilities and reasonable accommodation requests.

42. Nessen dismissed Plaintiff's complaints, stating that was just how Plaintiff felt but that it was not actually occurring or words to that effect.

### PLAINTIFF LOST HER DRIVER'S LICENSE AS A RESULT OF HER DISABILITY

43. In or around the end of April 2023, Plaintiff fell asleep while driving.

44. Plaintiff lost her driver's license as a result.

45. Plaintiff was treated for Idiopathic Hypersomnia Sleep Disorder which is considered to be a disability under the ADA and the PHRA.

46. It was this disability that caused Plaintiff to fall asleep while driving in or around the end of April 2023.

47. Plaintiff began to have trouble staying awake during the day.

## PLAINTIFF REQUESTED AND WAS APPROVED FOR THE REASONABLE ACCOMMODATION TO WORK REMOTELY FULL-TIME

48. In or around May 2023, Plaintiff again requested the reasonable accommodation of full-time remote work because Plaintiff had lost her driver's license.

49. Plaintiff made this request to Hartford Insurance, which approved Plaintiff's reasonable accommodation request shortly thereafter.

## NESSEN ASSIGNED PLAINTIFF LESS TASKS

50. However, Nessen continued to assign Plaintiff less tasks and allowed Plaintiff's subordinates to communicate directly with her instead of Plaintiff, effectively excluding her from critical work communications.

51. Plaintiff felt that this was an attempt to push her out of Defendant.

## NESSEN ISSUED PLAINTIFF AN UNWARRANTED NEGATIVE PERFORMANCE REVIEW

52. In or around November 2023, Nessen issued Plaintiff a negative performance evaluation.

53. Nessen brought up alleged deficiencies on the performance review, such as missing deadlines and not properly supervising direct reports.

54. Importantly, neither of these alleged issues were previously mentioned to Plaintiff.

## NESSEN PLACED PLAINTIFF ON A PIP AND SET HER UP FOR FAILURE

55. On or about January 19, 2024, Nessen placed Plaintiff on a Performance Improvement Plan ("PIP").

56. Nessen gave Plaintiff a list of tasks she was required to complete within four (4) weeks, or she would be terminated.

57. Plaintiff determined that the amount of work she was given would require her to work overnight to complete it by the deadline.

58. Plaintiff sent an online submission to Human Resources, stating that she was being set up for failure as the time given to complete the assignment list on the PIP could not be accomplished within work hours.

59. Plaintiff received an automated response that her message had been placed in her file.

60. However, Human Resources did not contact Plaintiff further regarding her complaint.

61. Nevertheless, Plaintiff worked tirelessly in an attempt to complete as much of the assignment list as possible.

### DEFENDANT TERMINATED PLAINTIFF

62. On or about February 23, 2024, Nessen joined a Zoom meeting with Plaintiff.

63. Nessen abruptly terminated Plaintiff, allegedly due to "continued performance deficiencies", citing alleged missed deadlines and not properly supervising direct reports

64. Defendant discriminated against Plaintiff due to her disabilities and retaliated against her for requesting reasonable accommodations and for reporting disability discrimination in violation of the ADA and the PHRA.

65. In addition, Defendant retaliated against Plaintiff for utilizing her rights under the FMLA in violation of the FMLA.

66. Defendant's acts and/or omissions were willful or performed with reckless disregard to Plaintiff's federal statutorily protected rights.

### COUNT I – DISABILITY DISCRIMINATION
### AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

67. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

68. Plaintiff is a "qualified individual with a disability" as that term is defined under the ADA because Plaintiff has, or had at all times relevant hereto, disabilities that substantially limits or limited one or more major life activities or because Plaintiff had a

record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

69. Plaintiff was qualified to perform the job.

70. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

71. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse employment action.

72. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

73. Plaintiff's disabilities motivated Defendant's decision to take adverse actions against Plaintiff.

74. The purported reason for Defendant's decision is pretextual.

75. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

76. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

77. Defendant's conduct was willful or with reckless disregard to Plaintiff's federally protected statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

### COUNT II – DISABILITY DISCRIMINATION
### PENNSYLVANIA HUMAN RELATIONS ACT

78. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

79. Plaintiff is a "qualified individual with a disability" as that term is defined under the

9

PHRA because Plaintiff has, or had at all times relevant hereto, a disabilities that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

80. Plaintiff was qualified to perform the job.

81. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

82. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse employment action.

83. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

84. Plaintiff's disability motivated Defendant's decision to terminate Plaintiff.

85. The purported reason for Defendant's decision is pretextual.

86. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

87. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT III – RETALIATION
## AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

88. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

89. Plaintiff engaged in activity protected by the ADA.

90. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

91. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

92. Defendant's conduct/omission was willful or done with reckless disregard to Plaintiff's federally protected statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT IV – RETALIATION
## PENNSYLVANIA HUMAN RELATIONS ACT

93. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

94. Plaintiff engaged in activity protected by the PHRA.

95. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

96. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT V – RETALIATION
## FAMILY AND MEDICAL LEAVE ACT OF 1993, AS AMENDED

97. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

98. Pursuant to 29 U.S.C. § 2611(2)(A) and 29 U.S.C. § 2612(a)(1)(C), Plaintiff was eligible

for leave under the FMLA.

99. At all times material, Defendant knew, or should have known, of Plaintiff's need for FMLA Leave to care for her own serious medical conditions.

100. Plaintiff gave Defendant sufficient information to allow it to understand that she needed leave for FMLA-qualifying reasons.

101. The retaliation occurred in the form of the continued implementation of a policy that discourages and interferes with Plaintiff's right to invoke her federally protected rights under the FMLA.

102. As a result of Plaintiff's attempt to invoke her FMLA rights, by requesting and utilizing her FMLA rights, Defendant has retaliated against Plaintiff by terminating her employment.

103. Defendant's motivation for retaliating against Plaintiff was connected causally to Plaintiff's FMLA leave.

104. Defendant has acted in bad faith by retaliating against Plaintiff in violation of the FMLA.

105. As a direct and proximate result of Defendant's discharge of Plaintiff, Plaintiff is and was deprived of economic and non-economic benefits resulting from Defendant's willful and/or non-willful actions including but not limited to: loss of back pay, loss of increase in salary, loss of benefits preceding Plaintiff's filing of the lawsuit, cost of providing care, and double liquidated damages under the FMLA for violations not made in good faith.

106. Plaintiff demands judgment against Defendant for all available equitable relief including, but not limited to: reinstatement to job position, full restoration of all leave and health benefits, to which Plaintiff was entitled, and any additional unpaid leave up to the maximum permitted by the FMLA including but not limited to doubling the damages

proven inclusive of all wages, salary, employment benefits or other compensation denied or lost.

107. Plaintiff further demands favorable judgment against Defendant for all interest on the monetary benefits calculated at the prevailing rate, an additional amount equal to those sums, as liquidated damages under §107(a), fees and costs including the allowance of reasonable attorneys' fees, expert witness fees and other costs of the action against Defendant and such other orders and further relief as may be necessary and appropriate to effectuate the objectives of the FMLA.

**WHEREFORE**, Plaintiff demands compensatory and liquidated damages in addition to counsel fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Dawn Hancock, requests that the Court grant her the following relief against Defendant:

(a) Compensatory damages;

(b) Punitive damages;

(c) Liquidated Damages;

(d) Emotional pain and suffering;

(e) Reasonable attorneys' fees;

(f) Recoverable costs;

(g) Pre and post judgment interest;

(h) An allowance to compensate for negative tax consequences;

(i) A permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of the ADA, the PHRA and the FMLA.

(j) Order Defendant to institute and implement, and for its employees, to attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities;

(k) Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(l) Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

RESPECTFULLY SUBMITTED,

KOLLER LAW, LLC

Date: February 16, 2026    By:    */s/David M. Koller*
David M. Koller, Esquire
Jordan D. Santo, Esquire
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
215-545-8917
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

*Counsel for Plaintiff*